In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00111-CV
______________________________


GERCIE BROOKS, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE HEIRS AND ESTATE OF 
JOHN B. BROOKS, JR., DECEASED, Appellants
 
V.
 
ARMCO, INC., ET AL., Appellees


                                              

On Appeal from the 62nd Judicial District Court
 Lamar County, Texas
Trial Court No. 65121


                                                 



Before Morriss, C.J., Ross and Cornelius,* JJ.
Opinion by Justice Cornelius

_______________________________________
*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N
            Gercie Brooks, individually and as personal representative of the heirs and estate of John B.
Brooks, Jr., deceased (Plaintiffs), appeal from a take-nothing judgment rendered against them in their
suit against Armco, Inc.


 (Defendant), seeking damages for the death of John B. Brooks, Jr. 
Plaintiffs alleged that Brooks, who worked for Armco for twenty-two years, died from mesothelioma
caused by his exposure to products containing asbestos while at Armco's plant in Pasadena, Texas. 
Plaintiffs produced evidence that Brooks died from mesothelioma, but Armco produced medical
evidence that Brooks died from adenocarcinoma, unrelated to asbestos exposure. The case was tried
to a jury, which found against Plaintiffs on all issues.
            On appeal, Plaintiffs contend generally that they are entitled to a new trial because the trial
court erred in: failing to strike three prospective jurors for cause; improperly restricting the hearing
on Plaintiffs' Batson-Edmonson challenges by limiting their cross-examination of the defense
counsel and refusing to allow their attorney to examine defense counsel's voir dire notes; and
allowing Defendant an extra peremptory challenge to replace the strike it used to remove a
prospective juror on the basis of race. We overrule all of these contentions and affirm the judgment.
 
 
 
CHALLENGES FOR CAUSE
            In the voir dire examination of the jury panel, Plaintiffs' counsel tried to explain the burden
of proof that would be used in this case (preponderance of the evidence and clear and convincing
evidence) by comparing it with the burden of proof in criminal cases (beyond a reasonable doubt). 
After a lengthy attempt to explain the "beyond a reasonable doubt" burden, Plaintiffs' counsel asked
the panel members if any of them thought it should be the burden of the plaintiff in a civil damage
suit. Panel members four, five, and eleven indicated they thought the plaintiff in a civil suit should
be required to prove his case beyond a reasonable doubt like in a criminal case. Defendant objected
to Plaintiffs' counsel's confusing comparison of the different burdens of proof. In response, the trial
court told the jury panel he would instruct it regarding the proper burden of proof in this case. The
court did later instruct the jury on the proper burden of proof. After the trial court told the panel he
would instruct it on the proper burden of proof in this case, both counsel for Plaintiffs and for
Defendant further questioned the jury panel on the burden of proof and reiterated to it that the trial
court would instruct it on the proper burden. In this further questioning, none of the panel members,
including those who had earlier expressed a preference for the higher burden of proof, answered or
indicated they would not follow the court's instruction or would require a higher burden on Plaintiffs
than the court instructed them.
            Plaintiffs contend panel members four, five, and eleven expressed a bias as to the burden of
proof and were therefore subject to challenge for cause. But expressions indicating a bias that are
equivocal at most are not absolute grounds for disqualification. And an initial leaning toward a
particular view is not disqualifying if it represents skepticism or uncertainty rather than an
unshakeable conviction. Cortez, ex rel. Puentes v. H C C I-San Antonio, 159 S.W.3d 87, 94 (Tex.
2005). For a bias to disqualify a juror, it must appear that the state of mind of the juror leads to the
natural inference that he will not or cannot act with impartiality. Goode v. Shoukfeh, 943 S.W.2d
441, 453 (Tex. 1997). Statements or indications of bias may be the result of inappropriate leading
questions, confusion, misunderstanding, or ignorance, and veniremembers are not necessarily subject
to challenge for cause when they indicate a bias so long as the rest of the record shows that is not the
case. Cortez, ex rel. Puentes, 159 S.W.3d at 93. In reviewing the trial court's decision on challenges
for cause, we must consider the entire examination, not just answers that favor one side over the
other. Trial judges are better able to evaluate a juror's sincerity and capacity for fairness, and they
have the discretion whether to strike a panel member for cause when bias is not established as a
matter of law. Id.; see also Compton v. Henrie, 364 S.W.2d 179, 184 (Tex. 1963).
            From a review of the entire record, we find that panel members four, five, and eleven were
not biased as a matter of law, and the trial court did not abuse its discretion in refusing to strike them
for cause. A reasonable construction of the record is that the prospective jurors in question simply
stated what they thought the law ought to be on the burden of proof requirement, but when the trial
court explained that it would instruct them as to the burden of proof required in this case, they
indicated to counsel for both sides that they had no problem applying the burden of proof the court
said they must use and that they would not try to apply any higher burden of proof. None indicated
they could not or would not follow the law on the burden of proof as given to them by the trial court.
THE BATSON-EDMONSON HEARING
            Plaintiffs made a Batson-Edmonson challenge because of four panel members who were
peremptorily challenged by Defendant's attorney. Plaintiffs complain of the trial court's manner of
conducting the Batson-Edmonson hearing, contending that the court improperly curtailed their cross-examination of defense counsel about the race-neutral reasons he gave for striking several African-American panel members and that the court refused to allow Plaintiffs' counsel to examine the notes
made by defense counsel at voir dire.
            Plaintiffs objected to defense counsel's striking panel members nine, ten, twenty-three, and
twenty-eight, all of whom were African-American. In Batson v. Kentucky, 476 U.S. 79 (1986), the
United States Supreme Court held it was a constitutional violation to use peremptory challenges in
a criminal trial to exclude members of the jury panel on the basis of their race. The court extended
the rule of Batson to civil cases in Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991). When
a Batson or Edmonson challenge is made, the court must follow a three-step procedure. First, the
opponent of the peremptory challenge must establish a prima facie case of racial discrimination. 
Second, the party who exercised the peremptory challenge must come forward with a race-neutral
explanation for the challenge. Third, the trial court must determine if the party challenging the strike
has proven racial discrimination. At this step, the court should provide the party asserting objections
with a reasonable opportunity to conduct cross-examination. Goode, 943 S.W.2d at 445, 452.
            Plaintiffs contend the trial court failed to give them a reasonable opportunity to cross-examine defense counsel about his race-neutral explanations. We disagree. The trial court freely
allowed Plaintiffs to cross-examine Defendant's counsel. Plaintiffs' counsel questioned defense
counsel about his reasons for striking some of the African-American panel members, and defense
counsel explained and reiterated his reasons. Defense counsel was cross-examined about the four
panelists he challenged, as well as others on the panel that he did not strike. At one point in
Plaintiffs' cross-examination, the trial court commented that it was nearing 5:00 in the afternoon and
he wanted to let the jury go before it got too late. Plaintiffs' counsel demurred and said he wanted
more time to cross-examine defense counsel. The trial court said he could have five more minutes. 
The trial court then stated he was going to overrule the objections to the defense's strike of three of
the panel members, but he was going to sustain the objection to one of the strikes. Plaintiffs' counsel
again asked for more time to cross-examine. The court replied that counsel could continue the cross-
examination the next morning if he wanted additional time, but counsel replied, "I'm not going to
request that. I'm going to get through this as quick as I can."
            The trial court has great discretion concerning the conduct of the trial. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 240 (Tex. 2001). The court should provide a party objecting to allegedly
racially motivated challenges a reasonable opportunity to cross-examine opposing counsel about his
reasons for striking panel members, but courts in Edmonson hearings should also take care to prevent
unnecessary disruption in the trial courts. Goode, 943 S.W.2d at 452.
            We find the trial court did not abuse his discretion in limiting Plaintiffs' cross-examination
at the Edmonson hearing. Plaintiffs adequately explored defense counsel's reasons for striking the
panel members, as well as his reasons for not striking others. Moreover, when the trial court offered
to give Plaintiffs more time to continue the cross-examination the next day, their counsel refused. 
We find no error.
            Plaintiffs also complain the trial court refused to let their counsel examine the notes defense
counsel took at voir dire. In an Edmonson hearing, the movant has a right to examine the voir dire
notes of the opponent's counsel only if that counsel relies on his notes to refresh his memory while
giving testimony. Id. at 449; Pondexter v. State, 942 S.W.2d 577, 582 (Tex. Crim. App. 1996). 
Defense counsel here referred to his voir dire notes several times during his direct testimony and on
cross-examination, but it appears he was only citing the notes to confirm the truth of his testimony,
rather than using the notes to refresh his memory. Even if this constituted "use" of the notes to
refresh his memory, we believe it is immaterial because the trial court examined the notes in camera
and verbally related their contents to Plaintiffs' counsel, who then used the references in his cross-
examination. If there was any error in the way the trial court handled this matter, we find it was
clearly harmless.
            Finally, Plaintiffs assert it was reversible error for the trial court to allow the defense an extra
peremptory challenge. The court ruled that defense counsel improperly struck one of the panelists
for discriminatory reasons. The trial court restored that panel member to the jury and allowed the
defense another peremptory challenge to replace the challenge that had been voided. Plaintiffs
contend that allowing the extra peremptory challenge was error because it "rewarded" Defendant for
using race-based discrimination. Plaintiffs rely on Peetz v. State, 180 SW.3d 755 (Tex.
App.—Houston [14th Dist.] 2005, no pet.), to support their position, but we find that case
distinguishable. In Peetz, the defendant, who is white, used every peremptory challenge he had to
remove every African-American person available to be on the jury. The court upheld one of the
strikes as being race neutral, but voided two strikes, on panelists six and ten, and placed those two
on the jury. The defendant then asked the trial court to grant him two additional peremptory
challenges to replace the two he used that had been voided, but the trial court refused. On appeal,
the Fourteenth District Court of Appeals recognized that, when a court finds a Batson violation, it
may in its discretion fashion an appropriate remedy and that the trial court there did not abuse its
discretion in refusing to give the defendant extra strikes, because the defendant deliberately used his
strikes to discriminate against all African-American panelists and the trial court could properly
penalize him for his deliberate discrimination against all African-Americans. The case here is
strikingly different from Peetz. Here, the evidence before the trial court in the Edmonson hearing
could reasonably have been construed by the trial court as showing that the improperly struck juror
was not excluded because of deliberate prejudice against African-Americans, but, rather, as the result
of an error of judgment as to what properly constituted race-neutral reasons. Such a conclusion is
buttressed by the fact that there were two other blacks on the panel in this case whom defense
counsel made no attempt to strike, but who were readily accepted by the defense and served as
jurors.
            It is a policy of this State that both parties be allowed no fewer peremptory challenges than
the minimum number allowed them by our rules and statutes, unless the trial court in its discretion
finds a compelling reason to allocate them otherwise. State, ex rel. Curry v. Bowman, 885 S.W.2d
421, 425 (Tex. Crim. App. 1993); see also Perez v. State, 171 Tex. Crim. 505, 351 S.W.2d 234
(1961); Troung v. State, 782 S.W.2d 904 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). 
Although Perez is a pre-Batson case, Curry v. Bowman and Troung v. State are post-Batson cases,
and Curry specifically involved a Batson violation.
            Additionally, if it was error for the trial court to replace Defendant's peremptory challenge,
it was clearly harmless. The jury verdict in this case was unanimous—twelve to none for Defendant. 
A vote of ten members would have been sufficient. If the trial court had refused to restore
Defendant's peremptory challenge, there still would have been eleven votes for the Defendant. If the
trial court had denied Defendant, even if one other juror changed his mind and voted for Plaintiffs,
the result still would have been a ten-to-one verdict for Defendant. The harmless error rule
specifically applies to errors in granting or refusing peremptory challenges. In order to secure a
reversal, the complaining party must show that the error made the trial materially unfair. Lorruso
v. Members Mut. Ins. Co., 603 S.W.2d 818, 820 (Tex. 1980); Perkins v. Freeman, 518 S.W.2d 532
(Tex. 1974); Tamburello v. Welch, 392 S.W.2d 114 (Tex. 1965). Plaintiffs have not made such a
showing here.
            Plaintiffs cite Batiste v. State, 888 S.W.2d 9, 13–14 (Tex. Crim. App. 1994), to argue that
the harmless error rule does not apply in Batson cases, but that case does not support their position. 
In Batiste, the Texas Court of Criminal Appeals assumed, without deciding, that a "Batson error"
is not amenable to a harm analysis. But the kind of Batson error the court was speaking about in
Batiste, and the error that was present in that case, was the error of an ineffective trial counsel failing
to preserve error and thus allowing a jury that was selected by racially discriminatory methods to sit
in judgment of a case. That did not occur in this case. The jury was not selected by racially
discriminatory means. The alleged error was in allowing the defense the full complement of strikes
allowed by law—not the allowance of a jury selected by discriminatory means to decide the case.
            For all the reasons stated, we overrule Plaintiffs' contentions and affirm the judgment.
 
                                                                                    William J. Cornelius*
                                                                                    Justice

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

Date Submitted:          March 2, 2006
Date Decided:             May 17, 2006